JP:GSG
F#2005R00782

# 05   665M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

STEPHAN KOCAN,

            Defendant.
- - - - - - - - - - - - - - - - X

AFFIDAVIT IN SUPPORT
OF APPLICATION FOR
ARREST WARRANT

(T. 18, U.S.C., §
2252A(a)(2))

      MICHAEL McANDREW, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

      Upon information and belief, on or about and between March 9, 2004 and May 4, 2004, within the Eastern District of New York and elsewhere, the defendant STEPHAN KOCAN did knowingly receive and distribute child pornography that had been mailed, or shipped or transported in interstate commerce by computer, in violation of Title 18, United States Code, Section 2252A(a)(2).

      (Title 18, United States Code, Section 2252A(a)(2)).

      The source of your deponent's information and the grounds for his belief are as follows:

      1.  I have been a Special Agent with the FBI for approximately eight years and am presently assigned to the FBI New York Division's Crimes Against Children Squad. As a Special Agent with this squad, I investigate a variety of crimes against

2

children, including the trafficking of Child Pornography.[1] In this regard, I have been involved in numerous investigations in which Child Pornography was stored, viewed, and/or transmitted by computer. During the course of these investigations, I have reviewed numerous photographs and videos involving Child Pornography, specifically, photographs and videos that depict minor children (less than 18 years of age) involved in sexual activity. Through my experience in these investigations, I have become familiar with the methods of determining whether a child depicted in Child Pornography is a minor.

2. The factual information set forth in this affidavit is based on my investigation and upon information provided to me orally and in writing by other FBI agents and law enforcement officers. Because this affidavit is offered for the limited purpose of establishing probable cause to arrest the defendant STEPHAN KOCAN, I have not included in this affidavit

---

[1] "Child Pornography," as used herein, includes the definition in 18 U.S.C. § 2256(8) (any visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct), as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct (see 18 U.S.C. §§ 2252 and 2256(2)).

3

each and every fact uncovered during the course of this investigation.

## BACKGROUND ON THE INTERNET AND CHILD PORNOGRAPHY

3.  The Internet is a global network which allows for the sharing of data across computers attached to the network.

4.  The Internet uses a portion of the existing public telecommunication networks. Technically, what distinguishes the Internet from traditional circuit based communications is its use of a set of protocols called Transmission Control Protocol (TCP) and Internet Protocol (IP). Protocol is a set of rules that allows for seamless communications between disparate networks. Each Internet user often has an unique IP address.

5.  Individual users typically access the Internet through an Internet Service Provider ("ISP") using a modem or other connection device, such as a cable or Digital Subscriber Line (hereinafter referred to as "DSL"). For example, AOL is a subscription-based ISP that offers its users a number of services, including Internet access and electronic mail ("e-mail"). E-mail enables AOL users to communicate and exchange electronic messages, files and documents with other Internet users that also have access to e-mail services. In addition, AOL offers its users with other services such as chat rooms and instant messaging. Chat rooms are topic-specific areas, either created by AOL or by its users, where AOL users can go and

communicate in real time with other AOL users who are also on-line and in the chat rooms. AOL's instant messaging service also allows its users to communicate with other AOL users in real time by text, and, in some cases, by video. Instant messaging is more private than chat room communications and is most frequently done between a smaller group of users. Both chat rooms and instant messaging, however, afford AOL users the means to exchange electronic files and documents by attaching them to their communications. In the case of AOL, whenever an AOL subscriber accesses AOL's e-mail, chat rooms, or instant messaging services, all of these communications are routed through AOL's central computer system which is located in Vienna, Virginia, which is located within the Eastern District of Virginia.

7. Additionally, when AOL users use the services described above, they often do so using screen names, which in most cases do not correspond to the user's true name. AOL permits its users to complete and post a profile of themselves using their screen names for other AOL user's to view. These profiles are in an area of AOL entitled the "Profiles Directory." These profiles typically list the AOL user's screen name, the area where the user lives, their age, occupation, gender, hobbies/interest, and employment. Some profiles may also include the AOL user's photograph. Despite the use of screen names, AOL through account information such as credit card and other payment

records is able to identify the name and locations of its users. In the case where there are multiple screen names associated with an AOL account, AOL through its records is able to identify the name and billing address of the person(s) responsible for payment on the account.

8. The Internet and services provided by ISPs such as AOL, therefore, afford collectors of Child Pornography several different venues for obtaining, viewing and trading Child Pornography in a relatively secure and anonymous fashion.

## THE INVESTIGATION

9. On March 9, 2004, FBI Special Agent Steven Forrest of the FBI's Buffalo, New York Division Innocent Images Franchise, logged on to AOL in an undercover capacity using an undercover screen name.[2] Special Agent Forrest then accessed an AOL user-created chat room entitled "yunger the better." Once inside of that chat room, Special Agent Forrest was able to view the screen names of the other AOL users who were also inside that chat room. Special Agent Forrest then posted a message visible to all users in the chat room stating, in substance, that he had "vids of room topic to trade." Shortly thereafter, following an instant message exchange, he received a video file attached to an

---

[2] The undercover screen name that was used by Special Agent Forrest during the course of this investigation is not being disclosed at this time so that other on-going investigations being conducted using that screen name are not jeopardized.

6

e-mail from an AOL user with the screen name "KEEBZ489." This video file, which is described generally below, constitutes Child Pornography:

> The video file is entitled "9yrsblow(good_2min).rm" and is approximately 1 minute 59 seconds in length. It depicts an adult male lying on his back without pants on. The adult male is orally sodomizing a young girl, approximately nine years of age; to wit, he places his semi-erect penis in her mouth and then later directs her to lay on top of him and masturbate him with her hand.

10. Following his receipt of the above-described Child Pornography video from AOL user "KEEBZ489," Special Agent Forrest requested subscriber information from AOL concerning "KEEBZ489." The information provided by AOL revealed that the screen name "KEEBZ489" was associated with AOL account belonging to HOWARD KOCAN and FELICIA KOCAN, both of whom resided at 95 Noble Avenue, Brooklyn, New York, 11222, telephone number (718)383-3724 (the "KOCAN Residence").

11. On May 4, 2004, Special Agent Forrest, once again acting in an undercover capacity, logged on to AOL using the undercover screen name that he had previously used on March 9, 2004. At that time, Special Agent Forest entered a chat room on AOL entitled "LIKEem123456789." Once inside that chat room, Special Agent Forrest posted a message to all users inside of the chat room that he was interested in trading videos related to the topic being discussed in the chat room - Child Pornography. "KEEBZ489" then initiated contact with Special Agent Forrest

using AOL's instant messaging service. Subsequently, "KEEBZ489" sent Special Agent Forrest, who was acting in an undercover capacity, four e-mails, each of which had a video file attached. Two of these files included material that constitutes adult pornography and two of these files constituted Child Pornography, as described below:

    a.  One video file is entitled "vvy NICE & LONG Tvg013 cand 5-24.rm" and is approximately 13 minutes and 8 seconds in length. This video file depicts an adult male causing a prepubescent female to engage in numerous sexual acts. Specifically, the video depicts the prepubescent female in bondage and experiencing bodily pain. For example, she is naked, blindfolded, bound with rope around her breasts and attached to a collar, which is linked to a beam on the ceiling. While bound in this manner, the adult male digitally penetrates her vagina. Thereafter, the adult male pinches her breasts and slaps her vagina while she is naked, tied to a bench with ropes, and writhing in pain. The video then depicts the adult male digitally penetrating the female's anus, causing her to perform oral sex on him, and then ejaculating into her mouth.

    b.  The second Child Pornography video file is entitled "LEG-LIFT_FK.mpg" and is approximately 17 seconds in length. It depicts an adult male lying on his back and vaginally penetrating a prepubescent female under the age of 12.

12. During Special Agent Forrest's on-line interaction with "KEEBZ489" on May 4, 2004, "KEEBZ489" advised Special Agent Forrest that he had a DSL internet connection

through Verizon, Inc., and that he was communicating with Special Agent Forrest from home.

13. Special Agent Forrest then contacted Verizon to further identify "KEEBZ489." At that time, Special Agent Forrest provided Verizon with the IP address associated with the communications sent to him by "KEEBZ489" to that point and requested subscriber information for the IP address. In response, Verizon identified the IP address associated with "KEEBZ489" as belonging to HOWARD KOCAN, residing at 95 Noble Street, Brooklyn, New York, 11222, telephone number (718) 383-3724. This subscriber information matched the information provided by AOL regarding the screen name "KEEBZ489."

14. Special Agent Forrest also searched the AOL user Profiles Directory for the AOL screen name "KEEBZ489." Special Agent Forrest was able to retrieve a profile for "KEEBZ489," which indicated, among other things, that "KEEBZ489"'s first name was "Steve," that he resided in Brooklyn, and that his occupation was listed as "DSNY - New York's Strongest." FBI Agents identified DSNY as the Department of Sanitation of New York, whose motto is "New York's Strongest."

15. On May 12, 2004, Special Agent Forrest conducted a search of the on-line public records database "Choicepoint" for the name HOWARD KOCAN and the address for the KOCAN residence. This search revealed, among other things, that both a HOWARD

KOCAN and STEPHAN KOCAN are listed as current residents at the KOCAN Residence, that HOWARD KOCAN's date of birth is 6/17/1954, and that STEPHAN KOCAN's date of birth is 9/19/1978.

### THE SEARCH OF THE KOCAN RESIDENCE

16. On July 15, 2004, Magistrate Judge Lois Bloom issued a search warrant for the KOCAN Residence, permitting FBI agents to seize and search any computers and computer equipment located there. The search warrant was executed by FBI agents on July 20, 2004. During this search, FBI agents seized a Dell Dimension 4300 computer and a packaging slip showing that a computer hard drive had recently been returned to Dell (the "Dell Hard Drive") due to technical difficulties.

17. Also on July 20, 2004, FBI agents interviewed the parents of STEPHAN KOCAN, HOWARD and FELICIA KOCAN. HOWARD and FELICIA KOCAN informed agents that they, in addition to STEPHAN KOCAN, used the computer located at their residence. According to FELICIA KOCAN, however, she and her husband use the AOL screen names "hpkta" and "mrhkpta," and that her son STEPHAN KOCAN uses the screen name "KEEBZ489." HOWARD KOCAN further indicated that he does not use the screen name "KEEBZ489." Finally, when FBI agents questioned STEPHAN KOCAN, he admitted using the screen name "KEEBZ489," but denied possessing or distributing Child Pornography.

## THE SEARCH OF THE DELL HARD DRIVE AND DELL DIMENSION 4300

18.  Following the execution of the search warrant on July 20, 2004 at the KOCAN Residence, the Dell Hard Drive was retrieved from Dell pursuant to a subpoena. Both the Dell Hard Drive and the Dell Dimension 4300 recovered from the KOCAN Residence were then submitted to the FBI's Computer Analysis Response Team for forensic examination. The forensic examination of the Dell Dimension 4300 revealed, among other things, images of Child Pornography in the sent e-mail folder associated with "KEEBZ489," images of Child Pornography in the incoming/saved e-mail folder associated with the same account, and images of Child Pornography in a folder entitled "My Pics," which is a sub-folder under a main folder entitled "Stephan Kocan." An examination of the Dell Hard Drive then revealed, among other things, at least a dozen images of Child Pornography, two Child Pornography videos, and electronic evidence showing that the video files with the same file names as those that were sent to Special Agent Forrest by "KEEBZ489" on March 9, 2004 and May 4, 2004, described above in paragraphs 9 and 11(a), respectively, had at one time been on or accessed from the Dell Hard Drive.

19.  Following the results of the forensic examinations of the Dell Dimension 4300 and the Dell Hard Drive, I confirmed that STEPHAN KOCAN was employed by the Department of Sanitation of New York and that HOWARD KOCAN was employed by the

11

New York Metropolitan Transportation Authority. I then obtained the work schedules for HOWARD and STEPHAN KOCAN from their respective employers. My analysis of these work schedules revealed that at the times when the Child Pornography videos were transmitted by "KEEBZ489" to Special Agent Forrest, acting in an undercover capacity, HOWARD KOCAN was working and STEPHAN KOCAN was not.

WHEREFORE, your deponent respectfully requests that the defendant STEPHAN KOCAN be dealt with according to law.

*[signature]*
MICHAEL McANDREW
Federal Bureau of Investigation
New York Division

Sworn to before me this
18th day of May, 2005

signed JMA

HONORABLE JOAN ... ........
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK